CISCO SYSTEMS, INC., et al.

v.

HUAWEI TECHNOLOGIES, CO., LTD., et al.

No. CIV.QA.2:03–CV–027.

United States District Court, E.D. Texas, Marshall Division.

June 6, 2003.

---

Robert M. Parker, Parker Clayton, Tyler, TX, pro se.

Samuel Franklin Baxter, McKool Smith PC, Marshall, TX, Chris R. Ottenweller, Rachel D. Albright, Todd M. Briggs, G. Hopkins Guy, III, Orrick, Herrington & Sutcliffe LLP, Menlo Park, CA, for plaintiff.

Otis W. Carroll, Jr., Jack Wesley Hill, Ireland, Carroll & Kelley, Tyler, TX, Franklin W. Jones, Jr., Jones & Jones, Marshall, TX, David J. Harth, David E. Jones, Heller, Ehrman, White & McAuliffe LLP, Madison, WI, Robert T. Haslam, Stanley Young, Michael M. Markman, Tawen Chang, Heller, Ehrman, White & McAuliffe LLP, Menlo Park, CA, for defendants.

Michael A. Ladra, David C. Wang, Michael B. Levin, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, Eric Miller Albritton, Attorney at Law, Longview, TX, Edward J. Meisarosh, Wilson, Sonsini, Goodrich & Rosati, San Francisco, CA, for movant.

## MEMORANDUM OPINION

WARD, District Judge.

The court has considered the plaintiff's motion for a preliminary injunction and is of the opinion that the following order should issue:

### 1. Introduction.

As the term implies, a preliminary injunction often involves only an abbreviated record developed while a lawsuit is in its early stages. The primary purpose of a preliminary injunction is to protect the plaintiff from irreparable injury and preserve the district court's power to render a meaningful decision *after* a trial on the merits. *Canal Authority of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974). As a result, nothing in this opinion should be construed as any finding by this court on the ultimate merits of this dispute-litigation that involves two sophisticated commercial entities who compete for their respective shares in the worldwide router technology market. It is within this context that this decision is issued and it is

within this context that the court's rulings should be understood.

## 2. Discussion.

### A. Preliminary Injunctions–General Principles.

The grant or denial of a preliminary injunction rests in the discretion of the district court. *Canal Authority*, 489 F.2d at 572. To obtain a preliminary injunction, the plaintiff must establish that some likelihood exists that it will prevail on the merits, that it will suffer irreparable harm if the injunction is not granted, that the harm to the plaintiff outweighs any harm to the defendants, and that the injunction would not disserve the public interest. *Id.* The application of these factors varies with the facts of each case:

> Although a showing that plaintiff will be more severely prejudiced by a denial of the injunction than defendant would be by its grant does not remove the need to show some probability of winning on the merits, it does lower the standard that must be met. Conversely, if there is only slight evidence that plaintiff will be injured in the absence of interlocutory relief, the showing that he is likely to prevail on the merits is particularly important.

*Id.* at 578.

### B. Claims at Issue.

The plaintiff seeks injunctive relief with respect to its claims for copyright infringement and trade secret misappropriation. As to the copyright claim, the plaintiff seeks a preliminary injunction related to its user manuals, on-line help files, command line interface and IOS code. As to the trade secrets claim, the plaintiff seeks an injunction related to its source code. The court addresses each.

### 1. Copyright claims.

To prevail on the merits, a plaintiff in a copyright case must prove ownership of a valid copyright and copying of the constituent elements of the work that are copyrightable. *Feist Publications, Inc. v. Rural Tel. Service Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). To show copyright ownership, a plaintiff must prove originality and copyrightability in the work as a whole and by compliance with applicable statutory formalities. *Plains Cotton Coop. Ass'n. v. Goodpasture Computer Serv., Inc.,* 807 F.2d 1256, 1260 (5th Cir.1987). As to the copying element:

> Two separate components underlie proof of actual copying. First is the factual question whether the alleged infringer actually used the copyrighted material to create his own work. Copying as a factual matter typically may be inferred from proof of access to the copyrighted work and "probative similarity." Not all copying, however, is copyright infringement. The second and more difficult question is whether the copying is legally actionable. This requires a court to determine whether there is substantial similarity between the two works.

*Eng'g Dynamics, Inc. v. Structural Software, Inc.,* 26 F.3d 1335, 1340–41 (5th Cir.1994)(internal citations omitted). It is against these principles that the court has evaluated the plaintiff's request for injunctive relief related to its copyright claims.

#### a. User Manuals/On–Line Help Files.

■ The plaintiff asserts that the defendants copied certain portions of its user manuals and on-line help files. The defendants have agreed not to use the manuals and on-line help files alleged to infringe. The court has carefully considered the evidence on this point and is persuaded that the plaintiff has carried its burden to dem-

onstrate that a preliminary injunction is warranted. The defendants primarily suggest that no injunction should issue because, given their voluntary cessation of the allegedly wrongful conduct, there is no threat of irreparable injury. The court has carefully considered this argument but remains of the opinion that a preliminary injunction should issue. *Doe v. Duncanville Independent Sch. Dist.*, 994 F.2d 160, 166 (5th Cir.1993); *Meltzer v. Board of Pub. Instruction*, 548 F.2d 559, 566 n. 10 (5th Cir.1977); *H.O. Sports v. Earth & Ocean Sports, Inc.*, 2001 WL 514314 (W.D.Wash.2001)(trademark case, noting "[i]f the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [the plaintiff] substantial protection of its trademark."). The defendants' agreement not to use the manuals or on-line help files indicates that the defendants will be harmed very little by the issuance of the injunction. The plaintiff has sufficiently demonstrated that there is a likelihood of harm should the conduct recur. The court also finds that the injunction will not disserve the public interest. The plaintiff has established the *Canal Authority* elements with respect to its copyright claim related to the user manuals and on-line help files.

### b. Command Line Interface.

The plaintiff also seeks a preliminary injunction against the defendants' use of its command line interface, a non-literal element of its software. The plaintiff's command line interface ("CLI") is the user interface by which a network operator communicates with a Cisco router. The CLI consists of a number of different commands, which are organized into a hierarchy that groups commands at different levels to perform a network administration task. The plaintiff urges that its engineers made numerous choices in the development of the CLI, including the initial decision to select a command line interface as opposed to either a menu driven or a graphical user interface as well as the decisions related to the command structure and the command names themselves. These choices, according to the plaintiff, support a finding that the interface is entitled to copyright protection.

In this circuit, non-literal elements of a computer program *may* be entitled to copyright protection. *Eng'g Dynamics*, 26 F.3d at 1342. Other circuits appear to be more stingy. The First Circuit, for instance, characterized a menu command hierarchy as a method of operation. So characterized, the hierarchy was entitled to no protection under the copyright laws. *See Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir.1995), *aff'd by an equally divided Court*, 516 U.S. 233, 116 S.Ct. 804, 133 L.Ed.2d 610 (1996). The Fifth Circuit, however, recognizes that non-literal elements, including user interfaces, may be entitled to copyright protection. The circuit employs an abstraction/filtration/comparison method to assess the question. Execution of that approach filters out the unprotectable elements of a work, such as ideas, processes, facts, public domain information, *scenes a faire* material and other unprotectable elements of the work. The court may then compare any remaining protectable elements with the alleged infringing work to determine whether a defendant has misappropriated the plaintiff's copyrightable work. *Eng'g Dynamics*, 26 F.3d at 1342–43. The plaintiff has not undertaken this analysis. The court is therefore not persuaded to issue a preliminary injunction related to the plaintiff's CLI.[1]

---

**1.** The plaintiff urged at oral argument that the Fifth Circuit's holding in *Kepner–Tregoe, Inc.*

*v. Leadership Software Inc.*, 12 F.3d 527 (5th Cir.1994) absolved it of the need to analyze

#### c. IOS Code.

The court has carefully reviewed the pertinent portions of the briefs and the record related to the plaintiff's claim of copyright infringement as it pertains to the IOS code issue. The court has determined that the scope of any injunctive relief granted on this claim would be subsumed by the relief granted with respect to the trade secrets claim, as discussed more fully below. Therefore, it is not necessary to address this aspect of the copyright case.

#### 2. Trade Secrets–Cisco Source Code.

██ The plaintiff also seeks an injunction related to the use, disclosure and transfer by the defendants of the plaintiff's trade secrets-including its IOS source code. The defendants maintain that no injunction is necessary, because they have agreed not to use any portion of their VRP code that was derived from the plaintiff's EIGRP source code module. The defendants also contend that no injunction should be issued because the plaintiff has not sufficiently identified that portion of the code entitled to trade secret protection. Finally, the defendants argue that the plaintiff has failed to show that the defendants acquired the source code by any improper means.

There is a prefatory rift over the applicable substantive law. The plaintiff seeks relief under Texas trade secrets law. For their part, the defendants initially analyzed these issues under Texas law, but, in their surreply and during oral argument, they have directed the court to *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254 (3d Cir.2000) and have argued that under the analysis of the Third Circuit, the

court should apply Chinese law to certain elements of the trade secret claim. *See* Defendants' Surreply, at 18–19 ("[u]nder that analysis, the trade secrets law of China applies to Cisco's claim, and Cisco has done nothing to show that it can satisfy the requirements of that law.").

It is true that the Third Circuit's depacage yielded an application of Taiwanese law to certain elements of the plaintiff's trade secrets case. But that case stands on different footing from this one. Here, neither side has made any effort to prove Chinese law. "In the absence of sufficient proof to establish with reasonable certainty the substance of the foreign principles of law, the modern view is that the law of the forum should be applied." *Symonette Shipyards Ltd. v. Clark*, 365 F.2d 464, 468 (5th Cir.1966); *see also Banco de Credito Industrial, S.A. v. Tesoreria General de la Seguridad Social de Espana*, 990 F.2d 827, 836 (5th Cir.1993); *Cantieri Navali Riuniti v. M/V SKYPTRON*, 802 F.2d 160, 163 n. 5 (5th Cir.1986). Therefore, for purposes of assessing the request for a preliminary injunction, the court will analyze the trade secret questions with reference to Texas law.

To prove its trade secrets claim, the plaintiff must demonstrate (1) a trade secret existed; (2) acquisition of the trade secret by improper means; and (3) use of the trade secret without authorization. *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 784 (5th Cir.1999). As to the first element, courts generally recognize that a company's source code can constitute a trade secret. *McRoberts Software Inc. v. Media 100, Inc.*, 329 F.3d 557 (7th Cir.2003); *Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*,

---

the question presented under the abstraction/filtration/comparison approach. The court disagrees. *Engineering Dynamics* directly confronted the issues of the scope of

copyright protection for user interfaces and proof required to demonstrate infringement. The court is bound to analyze this case under the principles set forth therein.

307 F.3d 197 (3d Cir.2002); *Hogan Systems, Inc. v. Cybresource Int'l, Inc.,* 158 F.3d 319 (5th Cir.1998); *Trandes Corp. v. Guy F. Atkinson Company,* 996 F.2d 655, 663 (4th Cir.1993). The industry and the parties to this case share a similar view. *See* Langlois Declaration ¶ 4 ("[s]ource code is regarded by Cisco as some of its most confidential technology . . . ."); Jun Declaration ¶ 9 ("Huawei seeks to ensure that any software used as a tool in the development of its products is legally acquired by the owner of that software."); Jun Supplemental Declaration ¶ 3 ("a second computer used by the Huawei employee who ultimately received the outside source code is secured in a safe here in China, because it also contains Huawei source code along with the outside source code."); Xiaobing Declaration ¶ 3 ("Huawei does not make available any source code over its Web sites."). The plaintiff has sufficiently demonstrated-for purposes of the present motion-that its source code is maintained under secrecy and that reasonable methods have been employed to preserve its trade secret status.

The record also contains sufficient proof of the third element. It appears from the declarations that the defendants used a portion of the plaintiff's source code in connection with its development of a module of the defendants' VRP software. *See* Klausner Declaration, *passim;* Gage Declaration, *passim;* Min Declaration ¶¶ 4–5 (discussing Huawei's internal investigation into plaintiff's allegations); Jun Supplemental Declaration ¶¶ 2–4 (same).

The difficult question is whether the defendants acquired the trade secret by any improper means. The record on this point is underdeveloped. The defendants have tendered declarations that indicate in June, 1999, a third party not employed by Huawei provided a disk containing computer source code related to routers to a Huawei employee working on router development. Min Declaration ¶ 4. According to the Min Declaration, to that employee's knowledge, the third party did not work for the plaintiff, did not request payment for the disk, and did not mention anything about the origin of the disk. The Min Declaration also states that in July, 1999, EIGRP code found on that disk was provided to a Huawei software engineer who at that time was working on the development of Huawei's version of the EIGRP protocol for its VRP software. The plaintiff disputes this explanation, and urges the court that the overall circumstances of the case support a finding that the defendants acquired the source code by improper means.

Mindful of the procedural posture of this case, the court has concluded it is unnecessary to determine the precise circumstances under which the defendants came into possession of the plaintiff's code. The defendants have agreed that they "will no longer sell anywhere in the world any version of VRP containing the EIGRP code accused by Cisco." Given this agreement, any harm to the defendants by the grant of an injunction related to the EIGRP code is minimal. Conversely, the harm to the plaintiff should a portion of its source code be available for dissemination would be great. As stated before, "[a]lthough a showing that plaintiff will be more severely prejudiced by a denial of the injunction than defendant would be by its grant does not remove the need to show some probability of winning on the merits, it does lower the standard that must be met." *Canal Authority,* 489 F.2d at 578. A portion of a company's confidential source code, if publicly disclosed, could inflict serious irreparable injury. As to the trade secrets claim, the plaintiff has "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and

thus for more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir.1953)(*quoted in Tampa Phosphate Railroad Co. v. Seaboard Coast Line Railroad Co.,* 418 F.2d 387 (5th Cir.1969), *cert. denied,* 397 U.S. 910, 90 S.Ct. 907, 25 L.Ed.2d 90 (1970)). Therefore, a preliminary injunction limited in scope is warranted to preserve the court's ability to render meaningful relief after all of the facts are developed through discovery.

The plaintiff, however, seeks a worldwide preliminary injunction that prevents any dissemination, disclosure, or transfer from Huawei to any third party of *any* Cisco source code, or any VRP source code or object code derived from Cisco's source code. The scope of the requested injunction is too broad. Outside of the EIGRP module, the plaintiff has not carried its burden to demonstrate that relief of this nature is appropriate.

The plaintiff's argument that its requested relief is appropriate is partially based on evidence of similarities between its router identification protocol and that used by the defendants' routers. The protocol uses numbers called Organizationally Unique Identifiers ("OUI"). The OUIs used by various companies, including the plaintiff, are publicly available. Moreover, the record developed thus far does not persuade the court that the defendants' use of the plaintiff's OUI number was in an effort other than to ensure compatibility. *Sega Enters. Ltd. v. Accolade, Inc.,* 977 F.2d 1510 (9th Cir.1992). As such, the court determines that the plaintiff has not carried its burden to demonstrate the propriety of such a broad preliminary injunction. *Canal Authority,* 489 F.2d at 575 (emphasizing that a preliminary injunction is "an extraordinary remedy, not available unless the plaintiff carries his burden of persuasion as to all of the four prerequi-

sites"). On the issue of source code, the preliminary injunction will be limited to the EIGRP module.

### 3. Bond.

The court will issue a preliminary injunction in accordance with this opinion. The injunction issued contemporaneously herewith shall be effective upon the posting by the plaintiff of a bond in the amount of five million dollars ($5,000,000 U.S.). Fed.R.Civ.P. 65(c); *Phillips v. Chas. Schreiner Bank,* 894 F.2d 127, 131 (5th Cir.1990). The court has determined that *this amount is appropriate to protect the defendants in light of the scope of injunction actually issued by the court.*

### PRELIMINARY INJUNCTION

For the reasons expressed in the court's memorandum opinion and order filed today, the court orders that Huawei Technologies, Co., LTD, Huawei America, Inc. and Futurewei, Inc. (collectively "Huawei"), their directors, officers, employees, agents, affiliates, representatives, attorneys, servants, subsidiaries, and companies under Huawei's control, successors, assignees, and all other persons or entities acting in concert, privity or participation with Huawei, shall immediately:

1. Cease using, importing, exporting, selling or offering for sale, distributing, reproducing, or disclosing worldwide any operating system that either contains or is derived, compiled or developed from Cisco's EIGRP source code module or any portion thereof;

2. Cease using any Huawei engineer, consultant, staff, employee, agent, or personnel who received, read, edited, accessed, copied, or otherwise worked with Cisco EIGRP source code or VRP source or object code derived from such Cisco EIGRP source code in the development of any comparable func-

tionality in any future versions of VRP;

3. Cease distributing in the United States any version of Huawei's user manuals or on-line help files that copy portions of any user manual or on-line help files copyrighted by Cisco or that are substantially similar to any user manual or on-line help files copyrighted by Cisco.

4. Bond is set at five million dollars ($5,000,000 U.S.).